VILLAGE OF COVINGTON, APPELLANT, *v.* LYLE, APPELLEE.

[Cite as Covington v. Lyle (1982), 69 Ohio St. 2d 659.]

(No. 81-575—Decided March 9, 1982.)

*McCulloch, Felger, Fite & Gutmann Co., L.P.A.,* and *Mr. Richard V. Grimes, Jr.,* for appellant.

*Mr. Michael W. Hemm,* for appellee.

LOCHER, J. This cause presents the issue of whether a mayor, who presides over a mayor's court in a village which is organized in the "statutory form" of government under R. C. Title 7 and which has combined executive and judicial powers may hear and decide a contested misdemeanor case without violating the defendant's constitutional right to due process of

law. Appellant village argues that there was no due process violation in this case. We agree.

R. C. 1905.01 establishes jurisdiction for mayor's courts and provides, in pertinent part: "In all municipal corporations not being the site of a municipal court nor a place where a judge of the * * * Miami county * * * municipal court sits * * * , the mayor of the municipal corporation has jurisdiction to hear and determine any prosecution for the violation of an ordinance of the municipal corporation * * * , subject to the limitations of sections 2937.08 and 2938.04 of the Revised Code." Section 1 of Article IV of the Ohio Constitution authorizes the General Assembly to establish courts. "The accepted rule is: An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and the constitutional provisions are clearly incompatible. *State, ex rel. Dickman,* v. *Defenbacher* (1955), 164 Ohio St. 142, 128 N. E. 2d 59." *State, ex rel. Brockman,* v. *Proctor* (1973), 35 Ohio St. 2d 79, 84. We begin our analysis, therefore, with the presumption that the "statutory form" of village government is constitutional.

Mayor's courts which decide misdemeanor or traffic cases have received constitutional scrutiny, because the mayor may possess a combination of executive and judicial powers. " * * * [T]he mere union of the executive power and the judicial power in * * * [the mayor] can not be said to violate due process of law." *Tumey* v. *Ohio* (1927), 273 U. S. 510, 534, quoted with approval in *Ward* v. *Monroeville* (1972), 409 U. S. 57, 60. Therefore, the "statutory form" of village government is not unconstitutional on its face.

Rather, due process analysis requires that we examine the interaction of whatever financial interest the mayor may have in a particular case with the nature and extent of his executive powers. Neither of these considerations is necessarily controlling, however. In some cases, a substantial financial interest of the mayor has been a significant factor. See *Tumey, supra* (mayor's compensation directly tied to revenue from mayor's court); *Monroeville, supra* (substantial portion of village income provided by mayor's court). In other cases, the lack of executive power in the mayor had a bearing on consti-

tutionality. See *Dugan* v. *Ohio* (1928), 277 U. S. 61 (city manager as active executive); *State, ex rel. Brockman,* v. *Proctor, supra* (city manager with all executive power and administrative responsibility).

None of these cases provides the same factual situation as this case, however. We must undertake constitutional analysis anew. " * * * [T]he test is whether the mayor's situation is one 'which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused . . . .' [*Tumey, supra*], at 532." *Monroeville, supra,* at 60. In order to examine "the mayor's situation," therefore, we must look at the particular circumstances of this case, *id.,* at 62 (White, J., dissenting), and examine the "statutory form" of village government as applied.

The Municipal Court took judicial notice that "[r]evenue from the Mayor's Court does *not* constitute a *substantial portion* of the revenue for the Village of Covington." (Emphasis added.) This fact distinguishes this case from *Monroeville, supra.* R. C. 1905.21 prohibits the mayor from receiving a direct benefit from any monies paid to the court and distinguishes this case from *Tumey, supra.*

On the other hand, R. C. 1905.21 provides that the legislative authority must fix the mayor's annual salary; and R. C. 733.40 requires that the mayor pay all monies received by the court into the municipal treasury. "The mayor * * * receives a salary which is not dependent on whether he convicts in any case or not. While it is true that his salary is paid out of a fund to which fines accumulated from his court under all laws contribute, it is a general fund, and he receives a salary in any event, whether he convicts or acquits. There is no reason to infer on any showing that failure to convict in any case or cases would deprive him of or affect his fixed compensation." *Dugan, supra,* at 65. As a result, the "statutory form" of village government does not create a financial "temptation" for a mayor presiding at a village mayor's court.

Village mayors working within the "statutory form" of government are not autonomous executives. "The executive power of villages shall be vested in a mayor, clerk, treasurer,

marshal, street commissioner, and such other officers and departments thereof as are created by law." R. C. 733.23. The legislative authority controls compensation for public servants of the village and supervises financial matters. See R. C. 731.13, 733.32, 733.33 and 733.41, respectively. The mayor has limited powers of appointment. See, *e.g.,* R. C. 733.31 (filling vacancies in elective office); 737.15 (village marshal "with the advice and consent of the legislative authority of the village"); 737.16 (deputy marshal, policemen, etc., subject to confirmation by the legislative authority of the village). On balance, therefore, the "statutory form" of village government "satisf[ies] the appearance of justice," *Offutt* v. *United States* (1954), 348 U. S. 11, 14, and does not necessarily create a judicial "temptation" because of the mayor's diluted executive authority.

A mayor's judicial decisions are not without scrutiny either. R. C. 1905.22 provides for appeals from the mayor's court to the municipal or county court with jurisdiction. R. C. 1905.25 requires that each of these appeals "shall proceed as a trial de novo."

This opportunity for review of the legal issues and facts enhances the credibility of the mayor's court system. The United States Supreme Court observed, in *North* v. *Russell* (1976), 427 U. S. 328, 335-336: "In *Colten* v. *Kentucky,* 407 U. S. 104 (1972), we considered Kentucky's two-tier system there challenged on other grounds. We noted:

" 'The right to a new trial is absolute. A defendant need not allege error in the inferior court proceeding. If he seeks a new trial, the Kentucky statutory scheme contemplates that the slate be wiped clean. Ky. Rule Crim. Proc. 12.06. Prosecution and defense begin anew . . . . The case is to be regarded exactly as if it had been brought there in the first instance.' *Id.,* at 113. We went on to note that the justifications urged by States for continuing such tribunals are the 'increasing burdens on state judiciaries' and the 'interest of both the defendant and the State, to provide speedier and less costly adjudications' than those provided in courts 'where the full range of constitutional guarantees is available . . . .' *Id.,* at 114. Moreover, state policy takes into account that it is a convenience to those charged to be tried in or near their own com-

munity, rather than travel to a distant court where a law-trained judge is provided, and to have the option, as here, of a trial after regular business hours. We took note of these practical considerations in *Colten:*

" 'We are not persuaded, however, that the Kentucky arrangement for dealing with the less serious offenses disadvantages defendants any more or any less than trials conducted in a court of general jurisdiction in the first instance, as long as the latter are always available. Proceedings in the inferior courts are simple and speedy, and, if the results in Colten's case are any evidence, the penalty is not characteristically severe. Such proceedings offer a defendant the opportunity to learn about the prosecution's case and, if he chooses, he need not reveal his own. He may also plead guilty without a trial and promptly secure a *de novo* trial \* \* \* .' *Id.,* at 118-119." The trial *de novo* provision of R. C. 1905.25 serves the same purpose as that in *Colten* and *North.*

We also note that the *North* court, at page 337, distinguished *Monroeville* by observing that the fines recovered were a substantial portion of village income. That court also distinguished *Tumey* by pointing out that the direct relationship between the fines assessed and the mayor's compensation might result in bias to the defendant. In light of these remarks and the *North* court's approval of *Colten,* we view any remarks in *Monroeville* minimizing the importance of trial *de novo* after a judgment from a village mayor's court as *obiter dicta.*

We hold, therefore, that the structure of the "statutory form" of village government does not violate appellee's right to due process of law under either the Ohio Constitution or the United States Constitution. "There is nothing in the record from which it may be inferred that the mayor, as judge, has any, direct or indirect, personal or official substantial pecuniary interest in reaching a conclusion against \* \* \* [appellee]." *Brockman, supra,* at 84.

Accordingly, we reverse the judgment of the Court of Appeals.

*Judgment reversed.*

W. BROWN, SWEENEY, C. BROWN and KRUPANSKY, JJ., concur.

CELEBREZZE, C. J., and HOLMES, J., dissent.

CLIFFORD F. BROWN, J., concurring. I concur in the well-crafted majority opinion authored by Justice Ralph Locher. In my view, the instant case is distinguishable from that presented in *Ward* v. *Monroeville* (1972), 409 U. S. 57, on two critical issues. First, the Municipal Court took judicial notice that the village of Covington mayor did not have a substantial financial interest in the revenues generated by the Mayor's Court. In *Monroeville,* by contrast, a substantial portion of the revenue for the village derived from fines levied by the Mayor's Court. Second, under R. C. 1905.25, effective June 12, 1970, an appeal from the Mayor's Court to the Municipal or County Court proceeds *de novo,* thereby removing any danger of prejudice suffered by the defendant in the Mayor's Court. This statute was not in effect at the time the defendant Ward appeared before the Monroeville Mayor's Court.*

---

* At the time defendant Ward was convicted in the Mayor's Court at Monroeville his conviction was appealable only to the Court of Common Pleas on questions of law only, and not by trial *de novo,* pursuant to R. C. 1905.22 effective October 19, 1961 (129 Ohio Laws 425), which provided:

"A conviction under an ordinance of any municipal corporation may be reviewed on appeal in the same manner as appeals on questions of law from a county court, and the judgment of affirmance or reversal may be reviewed in the same manner, and for this purpose a bill of exceptions may be taken, or a statement of facts embodied in the record on the application of any party."

Extant in 1969, in *pari materia* with R. C. 1905.22, were the following statutes, excerpted as follows:

R. C. 1921.01, effective January 1, 1958 (127 Ohio Laws 1083):

"Either party may appeal from the final judgment of a judge of a county court, to the Court of common pleas of the county in which the judgment was rendered."

R. C. 1913.09, effective October 19, 1961 (129 Ohio Laws 425), in pertinent part, provided:

"Any cause in a county court, either civil or criminal, shall be tried to the court unless a jury trial is demanded in writing by a party entitled to the same. * * * "

R. C. 1913.31 effective January 1, 1958 (127 Ohio Laws 1066), in pertinent part, provided:

"In all cases before a judge of a county court, mayor, * * * whether tried by a jury or the county court judge, * * * mayor, * * *either party may except to the decisions of the county court judge, mayor, * * * upon any matters of law arising in the case."

Effective June 12, 1970, R. C. 1921.01 was amended to provide as follows:

"Either party may appeal from the final judgment of a judge of a county court, to the court of appeals for the county in which the judgment was rendered."

Even though I find the Mayor's Court constitutional, I believe it serves no useful purpose in the administration of justice in Ohio. In my view, the Mayor's Court should be eliminated altogether, with county or municipal courts assuming jurisdiction over cases such as this.

W. BROWN, J., concurs in the foregoing concurring opinion.

HOLMES, J., dissenting. The day of the Mayors' Courts, as part of our system of justice, should be behind us in Ohio. However, that is a legislative matter yet to be determined. In the interim period, it becomes this court's duty, in the appropriate case presented, to pronounce the latitude of the jurisdiction of such courts.

It is my belief that the Supreme Court of the United States has spelled out the jurisdictional limits of the mayor's court in *Ward* v. *Monroeville* (1972), 409 U. S. 57. In that case the Supreme Court held it unconstitutional for a mayor's court to be the fact-finder in a disputed case where the mayor was both the chief executive and the administrative officer of the village responsible for the village's financial condition. Additionally, in *Monroeville,* the court recognized that the Mayor's Court contributed a "substantial" amount of revenue to the village.

In this case, the village of Covington has the same statutory form of government as did the village of Monroeville in *Ward* v. *Monroeville.* Thus, the question becomes whether the key factor in a challenge to a mayor's court such as the present one is whether the village derives a "substantial" portion of its funds from the mayor's court.

---

· Effective June 12, 1970, R. C. 1905.22 was amended to provide as follows:

"Appeals from a mayor's court may be taken to the municipal court or county court having jurisdiction within the municipal corporation."

Effective June 12, 1970, R. C. 1905.25 was amended to provide as follows:

"An appeal from the mayor's court to the municipal court or county court shall proceed as a trial *de novo.*

Former R. C. 1905.25 which was repealed October 14, 1963, provided for juries in mayor's courts, specifying their duties and the procedure for impaneling, and was not analogous to R. C. 1905.25, effective June 12, 1970.

Therefore, only on and after June 12, 1970, pursuant to R. C. 1905.22 and 1905.25, was provision made for a trial *de novo* in the Municipal Court or County Court on an appeal from the Mayor's Court.

In my opinion, that is not the determining factor. I feel that this court previously recognized this in *State, ex rel. Brockman,* v. *Proctor* (1973), 35 Ohio St. 2d 79. In *State, ex rel. Brockman,* the court stated, in paragraph two of the syllabus:

"The trial of a defendant charged with a traffic offense by a mayor acting as judge, who is also chief executive and administrative officer of the municipality, and who as such officer is responsible for the financial condition of the municipality, violates due process of law. (*Tumey* v. *Ohio* [1927], 273 U. S. 510; and *Ward* v. *Monroeville* [1972], 409 U. S. 57, followed.)"

As can be seen from the quoted language, the court, in *State, ex rel. Brockman,* did not feel that the deriving of a substantial portion of revenue was the determining factor. Rather, it was the relationship between the mayor as judge and as chief executive and administrative officer of the municipality which was the key factor.

It is my determination that this court should follow the holding of *State, ex rel. Brockman,* and preclude a mayor of a village with the statutory form of government from trying contested cases. This solution to the problem will avoid endless challenges to trials held by mayors in which the key question will be whether a substantial portion of the village's funds is derived from the mayor's court.

It would appear that my position here is supported by the approach developed by this court in the adoption of the Traffic Rules. If this case were a traffic offense, Traf. R. 9(B) would preclude the mayor from having tried the case. Rule 9(B) provides, in pertinent part, as follows:

"If a jury demand is not made pursuant to Criminal Rule 23, and the defendant waives his right to jury trial in writing, a mayor may try the case if (1) his compensation as a judge is not directly dependent upon criminal case convictions, or (2) he is not the chief executive and administrative officer of the municipality and as such responsible for the financial condition of the municipality."

In order for the result here to be consistent with Rule 9(B), this court should affirm the judgment of the Court of Appeals.

CELEBREZZE, C. J., concurs in the foregoing dissenting opinion.